## UNITED VERDE EXTENSION MINING CO. v. KOSO.

(Circuit Court of Appeals, Ninth Circuit. May 2, 1921. Rehearing Denied
June 6, 1921.)

No. 3580.

1. **Master and servant ⊂⊃289(34)—Evidence held to warrant submission of miner's negligence to jury.**

In an action for injuries to a miner resulting from a fall of rock on him, plaintiff's testimony that the rock fell from the roof which was too high for him to reach with his pick, and that he was shoveling waste rock when the accident occurred, is sufficient to warrant the jury in finding that the injury was not caused by his negligence, so that employer was liable under the Arizona Employers' Liability Act (Civ. Code 1913, par. 3154), imposing liability unless the servant was negligent, which is always a question for the jury under paragraph 3159, and Const. Ariz. art. 18, § 5.

2. **Evidence ⊂⊃364—Mortality tables admissible notwithstanding injured person was in hazardous occupation.**

Where plaintiff claimed permanent injuries, standard mortality tables were admissible in evidence as tending to establish his expectancy of life, though such tables were prepared for average persons, and plaintiff was engaged in the hazardous occupation of mining.

3. **Damages ⊂⊃216(5)—Charge on effect of mortality tables held correct.**

In an action for personal injuries to a miner, where the evidence was conflicting as to whether plaintiff's injuries were permanent, a charge that mortality tables were admitted to aid the jury to determine the probable duration of plaintiff's life, which was an essential element if the inquiry was permanent, that the jury should consider that plaintiff was engaged in a more hazardous employment than the average man, with reference to whom the tables were made up, that, while they were not an absolute guide, they might be considered in connection with all the other evidence in the case, but that, if the jury concluded the injuries were temporary, and not permanent, then the tables should not be considered at all, was correct and sufficient, in the absence of requests for more explicit instructions.

4. **Appeal and error ⊂⊃273(7)—Exception is necessary to review of charge on damages.**

Asserted error by the court in its instruction as to the elements of damages cannot be considered, where no exception was taken to the part of the charge covering that subject.

5. **Appeal and error ⊂⊃1004(3)—Denial of new trial for excessive damages not reviewed.**

The ruling of the trial court in denying a motion for a new trial, based on the ground that the amount of the verdict was excessive, will not be disturbed by the Circuit Court of Appeals.

6. **Appeal and error ⊂⊃501(1)—Overruling of motion to require security for costs not reviewed, in absence of exception in record.**

Error assigned to the overruling of defendant's motion that plaintiff be required to give security for costs presents no question for decision, where the record fails to show that defendant saved an exception to that ruling.

7. **Appeal and error ⊂⊃1040(1)—Failure to rule on demurrer to whole complaint held not prejudicial after election.**

Where defendant demurred to the whole complaint, which contained two counts, one based on the state Employers' Liability Law and another upon the common law, and also filed a general demurrer to the first

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

count, the failure of the court to rule on the demurrer to the whole complaint was not prejudicial to defendant, where the demurrer to the first count covered the main points of the other demurrer, and plaintiff, under order of the court elected to stand on the first count and dismiss the second count, especially where defendant made no request for a ruling on the demurrer to the whole complaint before the trial, and reserved no exception to the failure of the court to rule.

8. **Limitation of actions** ☞118(1)—**Delay in ruling on demurrers does not defeat right to prosecute action.**

Under Employers' Liability Act (Civ. Code Ariz. 1913, par. 3162), and Civ. Code Ariz. 1913, par. 710, requiring an action for personal injuries to be commenced and prosecuted within two years after the cause of action shall have accrued, an action for personal injuries, begun within the two years, is not barred because the court's delay in ruling on the demurrers postponed the trial until after the two years had elapsed.

In Error to the District Court of the United States for the District of Arizona; William H. Sawtelle, Judge.

Action by Mike Koso against the United Verde Extension Mining Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Mike Koso, defendant in error here, brought action under the Arizona Employers' Liability Law (Civ. Code 1913, §§ 3153–3179) and recovered judgment against the United Verde Extension Mining Company for injuries received during his employment in the mine of that company. The only testimony offered by Koso as to the accident was his own. He said that he had had 18 years' experience in mining; that he went to work for the defendant on the night of December 14, 1917, and was hurt about 6:30 the next morning; that he was shoveling into a mine car about 15 feet from the face of the drift, on the 1,200-foot level, in which he had been told to work by the foreman; that he was bending to get a shovelful when rock fell from the roof and knocked him down; that he lay there for perhaps 15 minutes or half an hour; that he got up and walked against the wall into a station and lay down; that after about an hour they put him on the cage and took him to the dry house, where they pulled off his clothes and put on clean ones, and tried to wash his neck and back which were full of rocks; that he was then sent to the hospital, where he remained about 20 days. On cross-examination he said that he did not know the height of the roof of the tunnel at the place where he was working, but he could not reach it with a pick; that he was working in waste, and did not know what kind of a tunnel it was; that where the rock fell it was not timbered, and that he saw no timbering in the tunnel, though there may have been some back 50 feet; that the rock that hit him was soft, and fell from both sides. Plaintiff then introduced the evidence of a physician as to physical injuries.

The only testimony as to the accident which defendant presented was also very brief. The man who had been jigger boss for the mining company when Koso was hurt said: That he had charge of five levels, and worked from 11:30 p. m. to 7:30 a. m.; that he went with Koso to his place of work on the 1,200-foot level, which was a ventilation drift 7 feet wide and 5 feet 4 inches across the top; that Koso was working at the face of the drift with two other men; that the drift was timbered to within less than 3 feet of the face, and that there was no room for another set; that the roof was 7 feet 10 inches high, just within reach of a pick, and the timbers came up to within 2 inches of the roof, with the lagging placed on top of them; that there were no open spaces in the lagging in timbers; that he instructed Koso to pick down the loose rock, even if it took him the whole shift, and then to go ahead and muck; that Koso said he was a miner; that it was 500 or 600 feet from the face where he was working back to the station; that he was making his rounds and saw Koso coming out, and that Koso told him he had been hurt;

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

that afterwards he examined the place where Koso was hurt, and found about a bushel of fine dirt, with no lumps as big as his fist; that it was waste, soft material; that the roof was in good condition, just a little hole where the stuff had fallen from. On cross-examination the witness said that the small hole in the roof was made by the bushel of rock; that the earth was perfectly even, and that the hole was not there when he put Koso to work; that when he met Koso he did not complain of pain or say he was unable to walk. Several physicians testified in defendant's behalf.

At the conclusion of all the evidence defendant moved for a directed verdict. The motion was denied, and exception was saved. The court submitted the case to the jury, and verdict was found for the plaintiff.

Favour & Cornick, of Prescott, Ariz., for plaintiff in error.

F. C. Struckmeyer and W. L. Barnum, both of Phœnix, Ariz., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] It is argued that there was no evidence tending to show that plaintiff was not negligent, or that his negligence did not cause the accident. The Employers' Liability Act of Arizona (chapter 6, title 14, Revised Statutes of Arizona of 1913, § 3154) provides that, to protect the safey of an employee in mining, the employer shall be liable for the injury—

"caused by any accident due to a condition or conditions of such occupation, * * * in all cases in which such death or injury of such employee shall not have been caused by the negligence of the employee killed or injured."

By section 3159:

"The question whether the employee may have been guilty of contributory negligence, or has assumed the risk, shall be a question of fact and shall at all times, regardless of the state of the evidence relating thereto, be left to the jury, as provided in section 5 of article XVIII of the state Constitution: Provided, however, * * * the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee."

Section 5, art. 18, of the Arizona Constitution is as follows:

"Sec. 5. The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury."

The statutes cited were considered in Calumet & Arizona Min. Co. v. Chambers, 20 Ariz. 54, 176 Pac. 839, where the court held that it was incumbent upon one who relies upon the Employers' Liability Law to prove that while engaged in the performance of duties required of him he was injured, and that the injuries were caused by an accident due to a condition of such employment, and not caused by the negligence of plaintiff.

Plaintiff's evidence met the obligation imposed. Assuming that he was telling the truth, he was on his first shift, shoveling waste from the floor where he was told to work. The place was about 15 feet from the face of the drift; he did not know the height of the tunnel, except that the top was too high for him to reach with his pick; there was no timbering at the point above him, and while bending over to get a shovel

full of waste there was a cave-in from above, waste fell upon him, and he was injured. If credible, this evidence negatived any reasonable deduction that the accident was caused by negligence on the part of the plaintiff, and the court correctly held that the case was one for submission to the jury under appropriate instructions. If it had appeared that it was part of the duty of Koso to pick down the loose rock, as well as to collect it after it was down, and that he was injured by the falling of the rock which he picked, it might be argued with much force that he contributed to the injury he suffered. But it is not reasonably to be inferred from the testimony of Koso that it was his duty to do more than to shovel waste after it came from the face of the tunnel. It is true that defendant's witness said that Koso was told to pick down loose rock and then go ahead and "muck"; but, as different conclusions could reasonably be drawn from the evidence, the ascertainment of the truth was for the jury.

[2] A physician testified that he examined Koso just before the trial and found a hernia starting on the right side, loss of half the power of his right hand, and fractures of lumbar vertebra and marks of injury to the shoulder blade. The testimony covered some injuries not included in the complaint, especially the hernia and loss of power in the hand; but no objection at all was made to the testimony of the doctor. After the physician testified, plaintiff offered in evidence the American Mortality Tables. Defendant objected, on the ground that, in the absence of proof, the tables do not apply to miners engaged in mining, as the tables are based on the law of averages, and without some explanation the mortality of men engaged in such hazardous work would not fall within the law of averages. In view of the fact that there was evidence tending to show that the injuries which plaintiff said he had received were permanent in character, we are of opinion that it was within the sound discretion of the court to permit the introduction of the mortality tables, notwithstanding the fact that the plaintiff was engaged in a hazardous calling. Wilkins v. Flint, 128 Mich. 262, 87 N. W. 195; Richmond R. R. Co. v. Garner, 91 Ga. 27, 16 S. E. 110; Tweedy v. Inland Brewing Co., 75 Wash. 25, 134 Pac. 468.

[3] The court instructed the jury that the tables were admitted in order to enable them to determine the probable duration of the plaintiff's life, and that in actions for personal injuries, if the injury is of a permanent character, in estimating damages, expectancy of life is an essential element, and that to show such expectancy standard mortality tables are admissible; that it was proper that the jury should consider the nature of the employment of the person injured, and that he was engaged in a more hazardous employment than the average men with reference to whom the tables were made up; and that, while the tables were not an absolute guide for the judgment of the jury, they might, however, be considered in connection with all the other evidence in the case. The court carefully charged that consideration of the mortality tables was only proper if the jury reached the conclusion that the injuries received by Koso were permanent, and that if they concluded that his injuries were "temporary, and not permanent," then

the tables as to his expectancy of life should not be considered at all. Defendant below made no requests for more explicit instructions with respect to the mortality tables, and we find no error in the charge explaining their relation to the issues. Vicksburg R. Co. v. Putnam, 118 U. S. 545, 7 Sup. Ct. 1, 30 L. Ed. 257; L. & N. R. Co. v. Burns, 242 Fed. 411, 155 C. C. A. 187.

[4] It is said the court erred in its instruction as to what elements could be taken into consideration by the jury in considering what damages, if any, plaintiff might recover. But, no exception having been taken to the part of the charge covering that subject, defendant cannot complain that it has been prejudiced. We may say, however, that upon the question of damages the instructions show that the court told the jury explicitly that they should consider whether the injuries, if any, were permanent, to what extent, if any, plaintiff had suffered, whether he had been disabled or incapacitated to earn a living at all, the age of plaintiff, what his occupation and income were, and whether his employment would have continued.

[5] The point that the amount of the verdict was excessive was presented on motion for new trial, which was overruled by the court. This court will not disturb the ruling. Copper River & N. W. R. Co. v. Reeder, 211 Fed. 280, 127 C. C. A. 648.

[6] Error is assigned because the court overruled defendant's motion that plaintiff be required to give security for costs. The affidavit in support of the motion was made by the claim agent of the defendant, who stated that to the best of his knowledge and belief, "and so far as he has been able to ascertain, the plaintiff, Mike Koso, is not the owner of any property out of which costs could be met by execution sale." Plaintiff's counsel objected to the motion, on the ground that the application did not comply with the laws of the state of Arizona, and did not show that the plaintiff was not the owner of property out of which costs could be met by execution sale. The statute (section 643, c. 24, R. S. of Arizona) provides that:

"At any time before trial, on motion of defendant, supported by affidavit showing that the plaintiff is a nonresident of the state, or that the plaintiff is not the owner of property out of which the costs could be made by execution sale, the court shall order the plaintiff to give security for the costs; and if the plaintiff fails so to do within ten days next after the order is made, the case shall stand dismissed."

Inasmuch as the record fails to show that the defendant saved an exception to the ruling of the court, there is no question for decision. It would seem, however, that an affidavit "showing" that plaintiff is not the owner of property out of which the costs could be made ought to contain more than the mere statement that, so far as affiant is able to ascertain, plaintiff is not the owner of any property.

[7] The complaint, when filed, contained two counts, the first based upon the Employers' Liability Law of Arizona, and another founded upon the common law. Defendant demurred to the "whole complaint," upon the ground of the improper joinder of two several causes of action, and also filed a general demurrer to the first cause of action, on the grounds that no negligence was pleaded and that the constitutional

rights of defendant were being invaded without due process of law. A few days before the trial, March 22, 1920, by order of court, plaintiff elected to proceed under the Employers' Liability Act, and dismissed the other cause of action, to which action defendant excepted. Defendant argues that the court erred in not ruling upon the demurrer to the "whole complaint." Inasmuch as the ruling upon the demurrer to the first cause covered the main points, no prejudice could have resulted. Moreover, defendant made no request of the court for a ruling before it proceeded to trial, and reserved no exception to the failure of the court to rule.

[8] It is said that action under the Employers' Liability Act (section 3162) cannot be "maintained" unless commenced within two years from the day the cause of action accrued, and that section 710 of the statutes of Arizona provides that an action for personal injuries shall be "commenced and prosecuted" within two years after the cause of action shall have accrued. As the cause of action in the present instance accrued in December, 1917, and trial was not had until March, 1920, we are asked to hold that the limitation of the statute has been rendered ineffectual.

We cannot agree with that position. Plaintiff below, having commenced his action within two years after the cause accrued, ought not to be denied a right to proceed with it merely because the court delayed ruling upon the demurrers or failed to make an order of election until more than two years passed after the accrual. After careful examination of the record, we find no prejudicial error, and must affirm the judgment.

Affirmed.